Longworth, J.
The first question which arises in the construction of this will is whether an estate vested in the distributees at the time of the testator’s death, or not until the happening of the events upon which a distribution was to take place.
Although conceding that in the interpretation of-wills, courts in general favor that construction under which estates will vest at the time of testator’s death, yet this, like every other rule of construction, will be controlled by the intention of the testator as gathered from the whole will. As was said by Scott, J., in Richey v. Johnson, 30 Ohio St. 288-292: “We are to read the whole will and ascertain not only what the testator has said, but what he has forborne to say ; .and the construction given to any part of the will should conform to its general scope and purpose as collected from the whole document. It is to be observed that the testator gives no interest in the farm in question, or in its proceeds, to his brothers and sisters, or to the children of any of them by way of direct devise or bequest. The gift is to be found only in the direction to distribute the proceeds of its sale and in the designation of the persons among whom distribution is to be made.”
These remarks apply with equal force to the case before us. The only words of gift in the will are to be found in the devise of the whole estate to trustees, and in the direction to distribute *256 the estate, after the determination of the particular estates and the final cessation of the. annuities, among persons, some of whom, perhaps, were yet to be born. Color is given to a contrary construction by the provision directing the trustees to make certain payments to, or provision for the minor sons, when they should become of age, to be thereafter charged against their distributive shares; but, taking the will as a whole, we are persuaded that the real intention of the testator was that no estate should vest in any of the objects of his bounty until the time for distribution should arrive, and then in those persons only who should answer the description at that time. Speaking for myself only I wish to say that it is after much hesitation, and still not without some embarrassing doubts, that I have arrived at this conclusion. These doubts arise from the vague and uncertain language in which the intention of the testator is expressed, and from which no thoroughly satisfactory conclusion can be drawn. Still I am satisfied that the most reasonable and probable interpretation is that given by my brethren.
Has the time then arrived for a distribution of the estate, either final or partial % Clearly not. No partial distribution could be made until it is ascertained who the parties may be who are entitled to take, and this cannot be ascertained until the time arrives for final distribution. And here we may say that we think it clear that but one distribution was ever contemplated by the testator, and that his object in calling it a “ final ” distribution, was simply to distinguish it from what might be called the partial distribution of $2,000 each to his minor sons when they should come of age.
On the one hand it is contended that the time arrives only upon the death of all of the annuitants ; on the other, that it depends upon the cessation of the annuities as a charge upon the estate by release or otherwise by operation of law. That the latter is the proper interpretation we entertain no doubt. The testator does not speak of the death of the annuitants, but of the “final cessation ” of the annuities; and surely it is but fair to take him to have intended just what he has said. Had he intended to postpone the division of his estate to such time *257 as all of tlie annuitants (one of whom, at least, was at his death little more than a child), should die,- we think he would have taken pains to make such intention appear in plain language. So long as these annuities were outstanding it is evident that no distribution could take place, seeing that these were to be paid only from the income of the estate; but upon their “ final cessation,” as charges upon the estate, no valid reason could exist against a final distribution, unless it should appear that the testator intended a further postponement, and such intention is not to be found either in the words used or in the surrounding circumstances of the case. We are unanimously of opinion that upon the “ final cessation ” of these annuities, either by death or release or surrender to the estate, it will become the duty of the trustee to distribute the estate in accordance with the provisions of the will. True, the trustee alleges in his answer that he knows from conversations held with the deceased that he contemplated a remote period as the time of distribution, but we aye not to regard any such averment. We are to find the intention of the testator in the will itself, and are not at liberty to allow its terms to be varied or contradicted by conversations or parol statements made either before or after its execution. Under neither interpretation, however, has the time for distribution yet arrived; the annuities of Clara Creighton and Nancy Rodgers being still outstanding valid charges upon the income of the whole estate. The widow’s annuity ceased by operation of law when she refused to take under the will, and the others, except the two mentioned, have ceased by the death of their owners; but these two are still in full force. It does not remove this obstacle to say that these ladies are ready and willing to release them to the estate, for they have not yet done so, nor can the court compel them to do so. The trustee clearly has no power under the will to purchase them;' but should their owners see fit to release them to the estate, then, and not until then, will the time arrive for a distribution.
We regard as wholly untenable the claim of the trustee that no distribution can be made so long as there may be grand-children, now living, or hereafter to be born, who may, *258 by possibility, at some time become destitute. Such construction would postpone tbe vesting of tbe estate and its enjoyment beyond tbe lives of all tbe beneficiaries now in being, and for more than twenty-one years thereafter. It is clear to our minds that this provision as to the support of destitute grandchildren was intended to apply only during such time as the estate should remain in the hands of the trustee and pending its distribution, and was not intended to control or limit the time fixed for such distribution by item 17 of the will.
We are asked to decide to whom shall pass upon distribution the share which Thomas Rodgers would have received had he lived. It is stated in argument, although it is not disclosed in the record, that the testator was twice married, and that his younger sons Janies 8., Thomas and Oliver were children of the second marriage. If this be true we are clearly of opinion that the testator, in providing that if any of the persons mentioned as distributees should die without issue “ then the interest which he would be entitled to shall go to theii brothers and sisters,” referred to brothers of the whole bloot, only as respects his own children. This is rendered manifesl from the care taken to exclude his other children from an\ share whatever in his estate. The sons had been uni or tunal ( in business, and were insolvent, and it is evident that the testator believed that a gift to them would have been a gift to their creditors, from which neither his sons nor their children would reap the benefit. The provision in question could apply only to the grandchildren and to these younger sons, seeing that no share could come to the older sons and daughters. We are therefore of opinion that, at the time of distribution, Thomas’ share will pass to his brothers J ames S. and Oliver if they be then living, and to their children if deceased. This conclusion also follows of necessity from our previous holding concerning the vesting of the estate only in the persons answering the description of the will at the time of distribution.

Judgment affirmed.

Johnson, J., did not sit in this case.